UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Willard G. Jeffers ) | |
|     Plaintiff, ) | 2:12-cv-02444 JWS |
| vs. ) | ORDER AND OPINION |
| Farm Bureau Property & Casualty ) Insurance Company, ) | [Re:  Motions at Dockets 56, 57, 58, 59, and 60] |
|     Defendant. ) | |

## I.  MOTIONS PRESENTED

At dockets 56, 57, 58, 59, and 60 defendant Farm Bureau Property & Casualty Insurance Company ("Farm Bureau") moves for orders precluding plaintiff Willard G. Jeffers ("Jeffers") from presenting certain evidence at trial.  Jeffers opposes all of the motions in a single combined response at docket 61.  Farm Bureau filed no reply.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Jeffers' Glendale property was one among thousands of Phoenix-area properties damaged in a hail storm on October 5, 2010.  Jeffers reported the damage to his property insurance company Farm Bureau.  The insurer sent adjuster Michael Shearer to investigate.  Shearer inspected the property on either October 18 or October 19 and

made notes of the damage he observed.[1]  Shearer inspected Jeffers' house, shed, gazebo, detached office, and pigeon loft.  Shearer waited two to four days to enter his notes into Farm Bureau's online database.[2]

Shearer's notes described damage to Jeffers' dwelling and pigeon loft but "[n]o other damages to other structures."[3]  Shearer arranged for a roofer to inspect Jeffers' foam roof, who concluded that the roof had to be replaced.[4]  Shearer made a list of damages and associated cost of repair in two "damages worksheets."  These worksheets list damage to foam and tile roofs on Jeffers' house, to the fiberglass roof on Jeffers' pigeon loft, and to a wood fence. They also list unspecified "tree removal/cleanup."[5]  On October 23, Farm Bureau issued its first payment on Jeffers' claim.  It issued another payment on December 23 for recoverable depreciation after repairs were preformed.[6]

In January 2011, a heating and cooling contractor inspected Jeffers' air conditioning units.  The contractor concluded that one of the units had extensive hail damage and should be replaced, while the other unit had "some hail damage" that "may be able to be combed out."[7]  Jeffers submitted a claim to Farm Bureau.  On January 8, Farm Bureau paid Jeffers 50 percent of the replacement value of the air conditioner that needed to be replaced (with the other 50 percent payable upon repair) and the full

---

[1] Doc. 32 at 1–3. The exact date is unknown because the timestamp on Shearer's camera showed October 18, but his inspection notes list October 19 as the date of the inspection. Doc. 47-3 at 13 pp. 43–45.

[2] Doc. 47-3 at 13 pp. 43–45.

[3] Doc. 32-1 at 80.

[4] Doc. 32-1 at 73–74.

[5] Doc. 32-1 at 77–78.

[6] Doc. 32 at 4 ¶¶ 13–14.

[7] Doc. 47-4 at 9.

value of repair to the other unit.[8] In March 2011, Jeffers obtained a quote for the installation of a new roof for his shed due to hail damage. Jeffers submitted the quote to Farm Bureau seeking payment. Farm Bureau paid Jeffers the full amount.[9]

In September 2012 an independent adjuster, Austin Insurance Services, inspected Jeffers' property,[10] and its report concluded that Jeffers' property required $50,936.86 in repairs due to hail damage.[11] Jeffers sued Farm Bureau in Arizona court in November 2012, alleging that Farm Bureau breached the insurance contract and the implied covenant of good faith and fair dealing. Farm Bureau removed the case to federal court.

### III.  DISCUSSION

**A. Motion at Docket 56**

At docket 56, Farm Bureau asks the court to exclude evidence regarding the manner in which its adjusters are paid on the grounds that it is not relevant and that even if relevant, such evidence would be likely to confuse and mislead the jury. Jeffers responds saying that "Farm Bureau incentivizes its adjusters to underpay claims under the guise of 'performance reviews' [which] is highly relevant and not near prejudicial to warrant preclusion at trial."[12] Plaintiff does not address Farm Bureau's assertion that evidence of the compensation scheme would confuse the issues or mislead the jury.

To support his proposition that Farm Bureau "incentivizes" its adjusters to low-ball claims, Jeffers cites to an extract from the deposition of adjuster Michael

---

[8]Doc. 32-1 at 13–14.

[9]Doc. 47-11 at 2; Doc. 32-1 at 14.

[10]Doc. 32 at 6 ¶ 30.

[11]Doc. 32-3 at 6.

[12]Doc. 61 at 2.

Shearer.[13] The court has carefully read the deposition extract and finds that it does not provide very good support for the proposition that Shearer's compensation is improved if he low balls claims. Rather, it is clear that his compensation is determined by a myriad of factors and that the "leakage," which is his reference to situations in which the adjuster pays for something that should not have been paid–such as paying to paint a wall that did not need to be painted–is but one among many considerations. In any event, even though "leakage" is one among many factors affecting adjuster compensation, the court agrees with Farm Bureau that the risk of confusing the issues and misleading the jury into putting inordinate emphasis on the compensation scheme substantially outweighs the rather modest probative value of the evidence which would be required to fully describe the compensation scheme. For that reason, the motion will be granted pursuant to Fed. R. Evid. 403.

**B. Motion at Docket 57**

At docket 57 Farm Bureau seeks to exclude evidence regarding the passing of plaintiff's wife four months prior to the hail storm on the grounds that it is not relevant. The court agrees, <u>provided</u> that Farm Bureau does not seek to introduce evidence or argument that Jeffers was dilatory. If it does so, then for the reasons set out in Jeffers' reply–reasons which under that circumstance, the court finds persuasive–Jeffers would be permitted to introduce evidence regarding his wife's passing and its effect on him.

**C. Motion at Docket 58**

At docket 58, Farm Bureau asks the court to preclude testimony from three individuals: Mary Alfaro, Doyle Stogener, and Gerald Berger. One of Farm Bureau's arguments is that Jeffers failed to timely disclose the names of these witnesses. Jeffers does not respond to that argument. An examination of the docket shows that the original planning and scheduling order required the parties to file final witness lists not later than August 30, 2013, and the order pointedly indicated: "Only those witnesses

---

[13]Doc. 61-1.

disclosed in a timely filed witness list will be permitted to testify at trial."[14] The deadline for filing witness lists was not extended, although pursuant to stipulations filed by the parties, some of the other deadlines were. The last order approving such a stipulated request for an extension approved an extension of the time for the completion of discovery to May 30, 2014, but did not say anything about the deadline for witness lists.[15] The three individuals were first disclosed on Jeffers' Seventh Supplemental Disclosure Statement dated May 27, 2014.[16] The document is not even labeled as a witness list, but even if it should be treated as a witness list, it was required to have been filed by August 20, 2013. Jeffers did not seek to amend the Planning and Scheduling Order. Even if he had, the court would not have permitted the addition of witnesses three days prior to a much extended date for the close of discovery. The motion will be granted on the grounds that the disclosure of the three new witnesses was untimely. It is unnecessary to consider the other arguments raised.

**D.  Motion at Docket 59**

In this motion Farm Bureau seeks to foreclose evidence of other lawsuits against Farm Bureau and prior alleged bad acts by its adjusters pursuant to Fed. R. Evid. 401-404 and 802. Farm Bureau was alerted to the possibility that Jeffers would seek to introduce such evidence in documents provided simultaneously with the Seventh Supplemental Disclosure Statement.

With respect to the other lawsuits against it, Farm Bureau asserts:

> Significantly, what Plaintiff has disclosed here are allegations by other attorneys and claimants, not fully litigated matters where there have been findings of law and a judgment. The allegations are conclusory, unsupported and speculative in nature. Further, the Plaintiff cannot demonstrate that any of the other claims or suits are substantially similar to the facts in this case.  . . .  In fact, they do not even relate to property claims and do not involve the same adjusters.

Jeffers does not address these assertions in his reply, so the court takes them at face value. Based on these considerations, the evidence of other lawsuits falls outside the definition of

---

[14]Doc. 13 at 5.

[15]Doc. 43.

[16]Doc. 58-1.

relevant evidence under Rule 401.  Even if one could cobble up some theory upon which such unrelated evidence has some relevance and is not hearsay, its probative value is minimal, and it is substantially outweighed by the risk of confusing the issues, misleading the jury, undue delay, and wasting the time of the court, the jury, and the litigants.  It would also be unfairly prejudicial to Farm Bureau.  The evidence of other lawsuits will be excluded under Rule 403.

Next, the court turns to the request to exclude prior bad acts by Farm Bureau adjusters. Jeffers concedes, as he must, that evidence of prior bad acts by Farm Bureau's adjusters is inadmissible to prove that Farm Bureau acted in conformity with them in the case at bar. However, he alleges that they should be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[17]  The language in Jeffers' brief just quoted is taken from Fed. R. Evid. 404(b).  Jeffers does not explain how any of these permissible uses would be relevant to an issue raised in the case at bar.  Jeffers' complaint alleges two claims, breach of contract and breach of the covenant of good faith and fair dealing in its handling of his claim.  These claims do not implicate the prior behavior of Farm Bureau's adjusters in connection with other claims.  Thus, evidence of the prior acts by Farm Bureau's adjusters cannot inform the jury with respect to any issue properly before it.  The evidence of prior bad acts is inadmissible under Rule 404(b)(1), and none of the exceptions in Rule 404(b)(2) applies.

**E.  Motion at Docket 60**

In this curious motion, Farm Bureau asks the court to prohibit "Plaintiff from misrepresenting testimony of Farm Bureau employees for the purpose of inflaming and misleading the jury."  The request appears to arise from the statement of facts Jeffers filed in opposition to Farm Bureau's motion for summary judgment.  However, that statement of facts will not be admitted in evidence at trial.  The court agrees with Jeffers that any concerns Farm Bureau has regarding the admissibility of evidence and statements by counsel in the course of

---

[17]Doc. 61 at 4.

trial should be addressed at trial through timely objections.  The motion at docket 60 will be denied.

### V.  CONCLUSION

For the reasons stated above:

1.   Farm Bureau's motion at docket 56 is GRANTED;

2.  Farm Bureau's motion a docket 57 is GRANTED ON CONDITION that Farm Bureau not raise allegedly dilatory behavior by Jeffers, but DENIED in the event Farm Bureau does so.

3.  Farm Bureau's motion at docket 58 is GRANTED;

4.  Farm Bureau's motion at docket 59 is GRANTED; and

5.  Farm Bureau's motion at docket 60 is DENIED without prejudice to proper objections raised at trial.

DATED this 4th day of September 2014.

                             /s/ JOHN W. SEDWICK
                      SENIOR UNITED STATES DISTRICT JUDGE